IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2013 Term

_____

No. 12-1276

_____

FILED

**November 6, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

AMANDA A.,
Petitioner Below, Petitioner

v.

KEVIN T.,
Respondent Below, Respondent

_____

Appeal from the Circuit Court of Cabell County
The Honorable Alfred E. Ferguson, Judge
Civil Action No. 09-D-462

Affirmed

_____

Submitted October 2, 2013
Filed: November 6, 2013

W. Stephen Flesher, Esq.                    Krista Conway, Esq.
Law Offices of W. Stephen Flesher           Conway Law Office
Huntington, West Virginia                   Huntington, West Virginia
Counsel for Petitioner                      Counsel for Respondent

The Opinion of the Court was delivered Per Curiam.

SYLLABUS BY THE COURT

1. "In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law de novo." Syllabus, *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004).

2. "Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syllabus, *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977).

3. "In visitation as well as custody matters, we have traditionally held paramount the best interests of the child." Syl. Pt. 5, *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996).

4. "West Virginia Code § 48-9-401(a) (2009) permits a court to modify a parenting plan order on the basis of a substantial change in circumstance that arises after the parenting plan order is entered if such change was not provided for in the parenting plan and

i

modification is necessary to serve the best interests of the child." Syl. Pt. 3, *Skidmore v. Rogers*, 229 W.Va. 13, 725 S.E.2d 182 (2011).

5. "'In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Point 2, Syllabus, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302[, 47 S.E.2d 221 (1948) ]." Syl. Pt. 1, *State ex rel. Cash v. Lively*, 155 W.Va. 801, 187 S.E.2d 601 (1972).

6. "To justify a change of child custody, in addition to a change in circumstances of the parties, it must be shown that such change would materially promote the welfare of the child." Syl. Pt. 2, *Cloud v. Cloud*, 161 W.Va. 45, 239 S.E.2d 669 (1977).

Per Curiam:

The petitioner, Amanda A. (hereinafter "the mother"), appeals from an order entered on September 14, 2012, by the Circuit Court of Cabell County, West Virginia. In that order, the circuit court upheld the family court's orders modifying primary custody of the parties' child. The mother contends that the lower court erred in affirming the modification of custody and the award of primary residential custody to the respondent, Kevin T. (hereinafter "the father"). Based on the parties' briefs, the appendix record designated for our consideration, and the pertinent authorities, we affirm the rulings of the lower court.

## I. Factual and Procedural History

Although the parties were never married, they shared the custody of their child, and each party resided in West Virginia immediately after their separation. On November 6, 2009, the mother provided notice of her intent to relocate to the State of Georgia in order to pursue educational opportunities and employment in a family business. A hearing on the relocation issue was conducted on December 22, 2009, and an order was filed by the family court on March 5, 2010, granting the mother permission to change her residence to the State of Georgia and to have primary residential physical custody of the child. Pursuant to an extended shared physical custody arrangement, the child thereafter resided with her mother

1

in Georgia approximately 209 calendar days per year and with her father in West Virginia approximately 156 calendar days per year, the equivalent of a nearly 57/43 percent shared custody arrangement.

Two years later, on March 15, 2012, the father filed a petition for contempt[1] and modification of the parenting plan, as a result of the child having attained pre-K public school age. The father argued that the prior parenting plan should be modified to permit him to have primary residential physical custody of the child. Further, the father argued that the mother's course of educational studies would likely require her to spend time away from the child and outside of the State of Georgia.

In her response to the March 15, 2012, petition filed by the father, the mother asserted that her educational travel had consisted of only two "one-week studies abroad made pursuant to the University [of West Georgia] MBA Program" and that she had made arrangements for the child to stay with the child's father in West Virginia during that period.

---

[1]In the contempt component of the underlying claim, the father asserted that the mother had failed to precisely comply with the parenting plan's requirement for the father to receive thirteen days per month with the child, but he conceded that the parties had jointly agreed to some degree of flexibility in the schedules. The family court did not directly address the issue surrounding compliance with the prior parenting plan, and this issue was not raised as an assignment of error in this appeal. We therefore do not address it.

The mother further denied that the change in circumstances justified a change in custody which would allow the father to be designated as the primary residential custodian.

The family court conducted a hearing on June 5, 2012. Both parties testified at the hearing, and both sought primary residential physical custody of the child. This Court has reviewed the video recording of the hearing, and it is apparent that both parties strenuously argued their respective positions. The mother contended that the child had spent the majority of time with her in Georgia and should be enrolled in school in Georgia, allowing the father both summer and additional visitation. The mother explained that she had considered the possibility of relocating again for purposes of furthering her education, she wished to obtain her doctorate in International Business, and she could not obtain such a degree in her current Georgia location. She further testified that she was employed by the College of Business in the University of West Georgia. She also stated that she had family in the Huntington, West Virginia, area with whom she could stay when visiting the child.

The father contended that the best interests of the child would be served by allowing her to enroll in school in West Virginia and granting summer and other visitation to the mother. He explained that he is settled in his employment and anticipates working the day shift. He does not have family in Georgia with whom to stay if he had to visit the child in Georgia during the school year. He also has another child living with him and that child's

3

mother in Huntington. He had pre-enrolled the parties' child in pre-K in Huntington. The parties both described their prior visitation schedule with their child, which included a rotation schedule of two weeks in Georgia followed by two weeks in West Virginia.

During the June 5, 2012, hearing, the family court explained to the parties that the prior extended shared parenting plan would no longer accommodate the child's needs once she started a school program which required her attendance five days per week. The family court was very complimentary of both parents but was adamant that the division of visitation time set forth in the prior parenting plan required modification.

By order dated August 3, 2012, the family court found that the child's anticipated attendance at a pre-K program necessitated a modification of the prior parenting plan. The family court specified that the prior parenting plan had provided for an extended shared parenting agreement, with a 209/156 day split, with the greater number of days being provided to the mother. The family court further explained that "[b]oth parents wish to modify the current parenting arrangement and be designated the primary residential parent for purposes of enrolling the child in school." The court observed that it was "likely that [the mother] will be relocating again" but that the father "is established here [in West Virginia] and does not plan to relocate." Further, the court stated that the mother has family residing in both Georgia and West Virginia, while the father only has family in West Virginia. The

court found that "[s]ince the child cannot be in school and continue the parenting schedule, the Court must choose a new schedule." The court ordered a change in the primary residential physical custody and awarded such custody to the father. The family court, in its August 2012, order, granted the mother "parenting time during the summer, Thanksgiving, Christmas and Easter/Spring breaks, along with optional (3) day weekends throughout the school calendar year." According to the mother's brief on appeal, she will accumulate approximately 150 days with the child under this arrangement if she exercises all her optional visitation days. The mother's prior child support obligation of approximately $205.00 per month was discontinued by the family court "since [she] shall be primarily responsible for visitation travel during the school year."

The mother filed a petition for appeal to the circuit court, asserting that the evidence introduced at the June 5, 2012, family court hearing did not support the family court's finding that the mother was likely to relocate; rather, she asserted that another relocation was only a possibility. The mother maintained that an alteration in custody based upon such speculation was highly inappropriate and that the family court erred in placing primary residential custody with the father.

The family court conducted another hearing on August 23, 2012, on the mother's motion for a temporary stay of the family court's August 3, 2012, order. This Court

has also viewed the video recording of that second hearing. During that hearing, the family court further articulated its reasoning for the alteration in primary residential physical custody and denied the mother's motion for a temporary stay pending appeal. The family court again observed that the two parents were both actively involved in the child's life and had previously shared custody under an extended shared parenting arrangement. The court stated that while it was not possible to provide a 209/156 day split between Georgia and West Virginia when the child had to be in school five days a week, the child's best interests would be served by developing a plan providing maintenance of an extensive relationship with both parents, with the focus upon stability, continuity, and the capacity to visit both parents frequently. The court specified that speculation regarding the mother's future educational plans was "not a primary factor" in the court's decision; rather, the court emphasized that the primary issue was the need to facilitate maximum parenting time between each parent and the child.

The second hearing resulted in the entry of a supplemental order by the family court on September 5, 2012. In that order, the family court explained that it had "addressed counsel and the parties [in the August 23, 2012, hearing] in an attempt to further explain the reasons behind her ruling to change the designated primary residential parent from [the mother] to [the father]." The family court reiterated that the current parenting plan was unworkable because the child had reached the age at which she would be enrolled in a pre-K

6

program and that the court had "attempted to craft an arrangement that will allow both parties to continue to be a significant part of their daughter's life, to the extent possible." The court further explained that "[e]ven though [the mother] had previously been designated the primary residential parent of [the child], this was not a standard shared parenting arrangement" and that the child was accustomed to "spending extended time with both parents and in both homes." The September 5, 2012, order specified, "[b]y way of clarification, [the mother] may exercise parenting time with [the child] (up to two weekends a month) when she is in West Virginia, provided she gives [the father] 24 hours notice and it does not coincide with his holiday time."

The mother thereafter filed a supplemental petition for appeal to the circuit court, and the circuit court entered a final order on September 14, 2012, affirming the family court order without further hearing. The circuit court found that the family court's decisions were supported by substantial evidence and that no abuse of discretion had occurred. The mother now appeals to this Court.

## II. Standard of Review

This Court has consistently expressed the standard of review in cases of this nature as follows:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the

7

family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syllabus, *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004). This Court has also been cognizant of the principle that "[q]uestions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syllabus, *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977). Further, "[i]n visitation as well as custody matters, we have traditionally held paramount the best interests of the child." Syl. Pt. 5, *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996). Mindful of these principles, we address the issues raised in this appeal.

## III. Discussion

The mother assigns the following two errors: (1) the lower court abused its discretion by improperly affirming the family court's finding that the mother was likely to relocate again, thus permitting speculative evidence to form the basis for the modification of custody; and (2) the lower court abused its discretion by basing its finding on both a misconstruction of the law and improper findings.

In support of her arguments on these assignments of error, the mother argues that the family court improperly considered speculative testimony regarding the mother's future plans to relocate and that the family court considered improper factors in reallocating

8

primary residential custody of the child. In response, the father argues that the family court did not improperly consider speculative testimony and appropriately recognized that a substantial change in circumstances, based upon the child attaining the age at which she would attend a pre-K program, necessitated modification of the prior parenting plan. Further, the father argues that the mother's brief to this Court mischaracterizes the family court's reasoning.

The methodology for determining when a parenting plan can be modified, as applicable to the circumstances of this case, is provided in West Virginia Code § 48-9-401(a) (2001):

> Except as provided in section 9-402 [§ 48-9-402] or 9-403 [§ 48-9-403], a court shall modify a parenting plan order if it finds, on the basis of facts that were not known or have arisen since the entry of the prior order and were not anticipated therein, that a substantial change has occurred in the circumstances of the child or of one or both parents and a modification is necessary to serve the best interests of the child.

In interpreting this statute, this Court held in syllabus point three of *Skidmore v. Rogers*, 229 W.Va. 13, 725 S.E.2d 182 (2011):

> West Virginia Code § 48-9-401(a) (2009) permits a court to modify a parenting plan order on the basis of a substantial change in circumstance that arises after the parenting plan order is entered if such change was not provided for in the parenting plan and modification is necessary to serve the best interests of the child.

9

229 W.Va. at 15, 725 S.E.2d at 184, syl. pt. 3.[2]  Thus, the statute requires both a change in circumstance that was not provided for in the prior parenting plan and a finding that modification is necessary to serve the best interests of the child.

The standards for determining the best interests of a child are addressed in West Virginia Code § 48-9-101(b) (2009):

> [T]he Legislature declares that a child's best interest will be served by assuring that minor children have frequent and continuing contact with parents who have shown the ability to act in the best interest of their children, to educate parents on their rights and responsibilities and the effect their separation may have on children, to encourage mediation of disputes, and to encourage parents to share in the rights and responsibilities of rearing their children after the parents have separated or divorced.

---

[2]As this Court explained in *Skidmore,*

> [T]he plain language of this statute [W. Va. Code § 48-9-401(a)] does not prohibit modifications of a parenting plan order simply because the change in circumstance could have been anticipated when the order was entered.  Rather, it permits modifications of a parenting plan order "on the basis of facts that. . . have arisen since the entry of the prior order and were not anticipated therein."  The phrase "not anticipated therein" does not mean that the change in circumstance could not have been anticipated generally, but rather that the parenting plan order does not make provisions for such a change.

229 W.Va. at 21, 725 S.E.2d at 190 (internal citations omitted).

Moreover, West Virginia Code § 48-9-102(a) (2009) provides that "[t]he primary objective of this article is to serve the child's best interests. . . ."  According to that statute, such interests are served by facilitating:

> (1) Stability of the child;
> (2) Parental planning and agreement about the child's custodial arrangements and upbringing;
> (3) Continuity of existing parent-child attachments;
> (4) Meaningful contact between a child and each parent;
> (5) Caretaking relationships by adults who love the child, know how to provide for the child's needs, and who place a high priority on doing so;
> (6) Security from exposure to physical or emotional harm; and
> (7) Expeditious, predictable decision-making and avoidance of prolonged uncertainty respecting arrangements for the child's care and control.

*Id*.

In addition to these legislative pronouncements, this Court has also repeatedly held that identification of the best interests of the child is the predominant consideration in custody determinations.  "In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Point 2, Syllabus, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302[, 47 S.E.2d 221 (1948) ]." Syl. Pt. 1, *State ex rel. Cash v. Lively*, 155 W.Va. 801, 187 S.E.2d 601 (1972).  Additionally, this Court has stated that "[t]o justify a change of child custody, in addition to a change in circumstances of the parties, it must be shown that such change would materially promote the welfare of the child."  Syl. Pt. 2, *Cloud v. Cloud*, 161 W.Va. 45, 239 S.E.2d 669 (1977).

11

From this Court's review of the video recordings of both hearings, it is apparent that the family court purposefully sought to construct a custody and visitation schedule which would most effectively serve the best interests of the child and facilitate as much time with both parents as possible under the circumstances.[3] The mother argues that the family court placed excessive emphasis upon the possibility that she might move again, an issue the mother properly characterizes as speculative.[4] This Court's meticulous review of the hearing videos and the family court orders, however, reveals a fundamental basis for the family court's best interest determination beyond the speculation surrounding the mother's future educational pursuits. The family court engaged in an evaluation of the effects of the parents' primary residences upon the well-being of the child. This analysis included the parties' abilities to visit the child, the ease with which such visitation could be conducted, and the financial burdens which might necessarily influence those potential visitations.[5] The family court explained as follows in its September 5, 2012, order:

---

[3]In its attempt to fashion a custody arrangement which would most effectively serve the best interests of the child, the family court raised the possibility that the child could continue on the prior shared parenting schedule by attending two different pre-K programs, one in Georgia and one in West Virginia, for two weeks at a time. Neither party felt that such arrangement would be workable.

[4]"A change of custody based on a speculative notion of potential harm is an impermissible exercise of discretion." *Rowsey v. Rowsey,* 174 W.Va. 692, 695, 329 S.E.2d 57, 61 (1985).

[5]In her brief to this Court, the mother also addresses the family court's reference to the parties' relative financial abilities to exercise the visitation granted to them and suggests that the family court "was perhaps misguided by applying the considerations" enumerated in West Virginia Code § 48-9-403 (2009). That statute is applicable to a determination
(continued...)

12

> If the child is primarily based in West Virginia, there are additional parenting time options for [the mother] that would not be available to [the father], if the child were in Georgia. [The mother] has close family in West Virginia. She has a place to stay in West Virginia, if she wants to come and spend time with her daughter. [The father] does not have any family in Georgia. If he wanted to go there to see his daughter, he would have to pay hotel and restaurant costs for the weekend. That would be cost prohibitive and those visits won't happen. On the other hand, it is very likely that [the mother] will be visiting her family in West Virginia, which will allow her to have her daughter when she is here. It is in the best interests of [the child] to have as much time as possible with *both* parents.

The family court therefore concluded that the child's best interests would be served by granting her father primary residential custody and allowing her to be enrolled in school in Cabell County, West Virginia, rather than in Georgia.

In this Court's review of the family court's determination, it is imperative to recognize that the family court was presented with a unique scenario in which two fit and involved parents, residing hundreds of miles apart, each sought primary residential custody. The family court evaluated the issue of the best interests of this child very thoroughly, with unwavering emphasis on the potential for quality time with both parents. During the June

---

⁵(...continued)
regarding the relocation of a parent and is not relevant to the circumstances at issue in this appeal because the relocation of the mother in this case was accomplished two years prior to the initiation of the matters relevant to this appeal. Based upon this Court's review, it appears that the family court properly referenced general financial considerations within the context of the best interests analysis rather than within the specific context of a relocation analysis. We are consequently unpersuaded by the mother's contention that reference to the relative financial abilities was in any manner inappropriate.

13

hearing, the family court commented on the difficulty of this case and explained that she was required to decide between "two of you that both offer very good situations for your child."

The family court properly recognized that the prior parenting plan, essentially structured as an extended shared parenting agreement, could not be maintained due to the child's anticipated enrollment in a pre-K program that necessitated attendance five days per week. Such enrollment had not been provided for in the prior parenting plan; thus, the family court was required to alter the parenting plan to permit the scheduling of school attendance in either Georgia or West Virginia. The court properly engaged in an analysis of the best interests of the child and ultimately found that such interests are served by awarding primary custodial responsibility to the father.

In discussing the application of the abuse of discretion standard, this Court has consistently stated that under such standard, "we will not disturb a . . . court's decision unless the . . . court makes a clear error of judgment or exceeds the bound of permissible choices in the circumstances." *Wells v. Key Commc'ns, L.L.C.*, 226 W.Va. 547, 551, 703 S.E.2d 518, 522 (2010) (citation omitted). This Court has also observed that "[i]n general, an abuse of discretion occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed but the . . . court makes a serious mistake in weighing them." *Shafer v. Kings Tire Serv., Inc.*, 215 W.Va. 169, 177, 597 S.E.2d 302, 310 (2004) (citation omitted). This Court has also

14

invariably stated that "[u]nder abuse of discretion review, we do not substitute our judgment for the circuit court's." *State v. Taylor*, 215 W.Va. 74, 83, 593 S.E.2d 645, 654 (2004) (Davis, J., dissenting) (citing *Burdette v. Maust Coal & Coke Corp.*, 159 W.Va. 335, 342, 222 S.E.2d 293, 297 (1976)). Thus, a family court's decision is entitled to significant deference. Absent an abuse of discretion, this Court must refrain from substituting its judgment for that of the family court, even if this Court might have decided a case differently.

Based upon the review undertaken by this Court, we can not conclude that the family court abused its discretion in awarding primary residential custody to the father in this case. As the family court noted, neither party had previously enjoyed a significant majority of the custodial responsibility, and placement of the child in West Virginia for the school year, with significant visitation of approximately 150 days per year to the mother, was determined to be the most effective way to serve the best interests of the child in maximizing her time with each parent. In the assessment of the child's best interests, the record does not reflect that the family court relied upon any impermissible factor. In fact, it appears that the family court engaged in a remarkably thorough analysis in its attempt to fashion a plan which would most comprehensively serve the best interests of this child. While an ultimate decision designating the mother as primary residential custodian with extensive visitation to the father would also have been reasonable, this Court discerns no abuse of discretion in the

result selected by the family court.[6] We consequently affirm the decision of the family court, as adopted by the lower court.

IV. Conclusion

For the foregoing reasons, this Court affirms the Circuit Court of Cabell County's September 14, 2012, order denying the petition for appeal and upholding the family court's orders granting the father primary residential custody.

Affirmed.

---

[6]We note also that a family court's best interests analysis would benefit from evidence regarding a child's emotional attachments to each parent and the level of bonding with each parent. *See State ex rel. Roy Allen S. v. Stone*, 196 W.Va. 624, 632, 474 S.E.2d 554, 562 (1996) ("In our opinion, the strength of a parent's bond with his or her child is not dependent upon some official or traditional arrangement; rather, the strength derives from the parent's personal and emotional investment and the relationship that develops from that investment."). In this particular case, despite the absence of a finding on this issue, we presume that the family court considered the fact that this child has spent nearly equal custodial time with both parents and has developed significant emotional attachments with her parents. The video recording of the hearing does not reflect that either party lacked an emotional bond with the child, and the parties have not raised this as an issue on appeal.

16