IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED
**June 6, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**JILLI N.,**
**Respondent Below, Petitioner**

**v.) No. 24-ICA-313**    (Fam. Ct. Tyler Cnty. Case No. FC-48-2021-D-30)

**JOSHUA N.,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Jilli N.[1] ("Mother") appeals the Family Court of Tyler County's July 8, 2024, final order on modification granting the Respondent, Joshua N. ("Father"), more than 50-50 parenting time. Father filed a response in support of the family court's decision.[2] Mother did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mother and Father were married on August 4, 2017, and separated on May 28, 2021. They share one child ("Child"), born in 2019. The parties divorced by final order entered on November 18, 2021. After the parties separated, Mother relocated to Ohio, and Father remained in Tyler County, West Virginia. Their residences are about forty-five minutes apart. The divorce order reflects that the parties entered a voluntary 50-50 parenting plan where the parties switched parenting time on a 2/2/5/5 schedule, with Father paying Mother $350 per month in child support.

In August of 2023, Father filed a petition for modification of the parenting plan. In his petition, Father alleged that Mother regularly gave him extra parenting time, refused to address the issue of whether Child would attend preschool in Ohio or West Virginia, and

---

[1] To protect the confidentiality of the juvenile involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Mother is represented by William B. Summers, Esq. Father is represented by Madison M. Carroll, Esq.

refused to participate in mediation to settle their disagreement. Mother denied these allegations in her answer. Father filed a proposed parenting plan reflecting the following: (1) during school, Mother would have Child on alternating weekends, and (2) during summer, Mother would have child from Monday to Wednesday, and on alternating weekends, from Friday to Monday. Mother did not file a proposed parenting plan.

A status hearing was held on December 7, 2023. By order entered on December 21, 2023, the family court granted both parties permission to enroll Child in their respective preferred preschools. Thereafter, the parties disclosed witness lists and engaged in discovery. On March 18, 2024, Father filed an emergency motion to allow Child to play baseball in West Virginia, which was granted by order entered on March 19, 2024. On March 28, 2024, Mother filed a motion to rescind the order allowing Child to play baseball in West Virginia, alleging that Father unilaterally made the decision to register Child to participate in West Virginia after Mother had signed Child up for activities in Ohio.

The final hearing was held on April 30, 2024. Father called several expert witnesses. The first was Shane Highly, the Tyler County Superintendent of Schools, who testified that Father's preferred school in Tyler County ranked in the thirties out of 340 schools in math and English proficiency, was in the top 10% for overall state test scores, and that older students were offered numerous sports and pre-college classes.

Mother offered no witnesses regarding her preferred school in Ohio.

Father's second expert witness was Jessica Diehm, a counselor at Coplin Health Systems, who testified about Father's post-traumatic stress disorder and traumatic brain injury. Ms. Diehm further testified that Father posed no physical threat or emotional danger to Child.

Father's new wife, Lorisa N., testified as his third witness. She testified that Child has his own room with a bed and toys at their house, Father and Child share a close bond, that Child has a close bond with her two children from a previous relationship, and that those children also attend Father's preferred school in Tyler County. Lorisa N. also testified that Father attends all of Child's sporting events and sometimes coaches his teams.

Father testified that the parties' 2/2/5/5 schedule would no longer work if Child attended Tyler County schools. He further testified that Mother's older child had attended Father's preferred Tyler County school and Mother never expressed concerns about it. Father also testified that Tyler County Schools are free and Mother's preferred school in Ohio had a $140 monthly fee. Additionally, Father testified that Mother attended all her older child's games but regularly missed Child's games, has failed to take Child to the doctor on multiple occasions, and did not have a bed for Child at her house. Father further testified that Mother worked at a family-owned bar where an employee used cocaine and that Mother had Child in the bar, Mother regularly shortened her parenting time, and she

2

only called ten times in a year to check on Child while he was with Father. He also testified that he is a retired, disabled veteran and teaches Child how to work on their farm.

Mother testified that she was unsure which preschool she wanted Child to attend,[3] and Father's preferred school was appropriate for her older child to attend. Mother further testified that at her home Child shares a bedroom with his older brother, and they have bunk beds. Mother also admitted that she had taken Child to the family-owned bar and that she rarely called to check on Child during Father's parenting time. Under Mother's proposed week-on/week-off parenting schedule, Child would be required to travel almost an hour to and from school every other week. Mother provided no evidence about student/teacher ratios or school rankings in Ohio.

The family court's final order was entered on July 8, 2024, and included the following findings of fact and conclusions of law:

1. The parties' 2/2/5/5 parenting plan was no longer feasible due to Child's enrollment in preschool and the distance between the parties.
2. It would be in Child's best interest if he attended school in Tyler County, West Virginia.
3. Father has shown more stability in ensuring Child attends all sporting events and activities.
4. Mother has shown a preference for attending her older child's sports.
5. Prior to the filing of the petition for modification, Mother frequently changed her parenting time and provided additional time to Father.
6. A 50-50 parenting plan would not be practical.
7. Mother failed to refute any of Father's expert witness testimony.
8. Mother did not produce evidence that Father's diagnoses would limit his ability to parent.
9. The parties shall abide by Father's proposed parenting plan beginning the 2024-2025 school year.
10. Child shall participate in activities within Tyler County, West Virginia.
11. Father waived child support.

It is from the July 8, 2024, order that Mother now appeals. For these matters, we apply the following standard of review:

When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

---

[3] Mother was considering two preschools in the area, one of which required a fee.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Mother raises six assignments of error, several of which are similar; therefore, we will consolidate them for our discussion. *See generally Tudor's Biscuit World of Am. v. Critchley,* 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (stating that "the assignments of error will be consolidated and discussed accordingly").

As Mother's first, second, third, and sixth assignments of error, she asserts that the family court erroneously modified the parenting plan without establishing a substantial change in circumstances, failed to include sufficient findings of fact to support its decision to deviate from a 50-50 parenting plan, and prioritized logistical convenience over other important considerations. Given our deferential standard of review, we disagree. The family court found that the parties' current parenting plan was "no longer feasible as contemplated given [Child's] enrollment in preschool [for] the [f]all of 2024 and the distance between the parents due to [Mother's] relocation," which was an implicit determination that a substantial change in circumstances had occurred.

Family courts are required to consider physical distance and any resultant interference with a child's education when deciding whether the 50-50 presumption is rebutted. West Virginia Code § 48-9-209(f)(5)(A) and (D) states as follows:

> In determining whether the presumption for an equal (50-50) allocation of physical custody has been rebutted, a court shall consider all relevant factors including any of the following . . . [w]hether an equal (50-50) physical allocation is . . . [i]mpractical because of the physical distance between the parents' residences [or] [w]ould disrupt the education of the child.

The family court considered Child's young age and determined that Child would likely miss some of school due to an inability to travel such long distances and that such a plan would "likely disrupt the education of the child." Upon review, we cannot find that the family court erred or abused its discretion in finding that a forty-five-minute commute for a young child would disrupt Child's education. *See Jacob H. v. Siera G.*, No. 24-ICA-147, 2024 WL 4787833 (W. Va. Ct. App. Nov. 14, 2024) (memorandum decision) (holding that the family court did not abuse its discretion in ruling that a forty-minute commute would disrupt the child's education rendering 50-50 parenting plan impractical).

In Mother's fourth and fifth assignments of error, she contends that the family court erred by not adequately considering the education and developmental benefits of Child attending school in Ohio where he has established family and friends, and by accepting Father's expert testimony on the quality of West Virginia schools without considering the effect the change would have on Child's overall well-being. We disagree. Father presented

expert witness testimony regarding the quality of his requested school. Mother, in contrast, provided no expert testimony in support of her proposed Ohio school, failed to rebut Father's evidence, and did not present a proposed parenting plan. The family court's order included sufficient findings of fact regarding the distance between the parties, each parent's involvement in Child's activities, and the benefits of each school district. Given the discretion afforded to a family court, and Mother's lack of evidence in support of her position, we decline to substitute our judgment for that of the family court. *See Amanda A. v. Kevin T.*, 232 W. Va. 237, 245, 751 S.E.2d 757, 765 (2013) ("[A] family court's decision is entitled to significant deference. Absent an abuse of discretion, this Court must refrain from substituting its judgment for that of the family court, even if this Court might have decided a case differently.").

Accordingly, we affirm the family court's July 8, 2024, final order.

Affirmed.

**ISSUED:** June 6, 2025

**CONCURRED IN BY:**

Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

5